IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RUSTY LEE-RAY RUSSELL, | Cause No. CV 16-34-BLG-SPW-TJC |
| Petitioner, | |
| vs. | FINDINGS AND |
| | RECOMMENDATIONS OF UNITED |
| LYNN GUYER, WARDEN OF | STATES MAGISTRATE JUDGE |
| MONTANA STATE PRISON,[1] | |
| Respondent. | |

This matter comes before the Court on an Amended Petition for Writ of

Habeas Corpus filed by Petitioner Rusty Lee-Ray Russell (Russell) pursuant to 28

U.S.C. §2254.  (Doc. 26.)  The Respondent has filed an Answer.  (Doc. 28.)  For

the reasons set forth below, it is recommended that Russell's petition be DENIED.

I.    **Factual Background**[2]

On the evening of April 25, 2005, Russell and Brandon Spotted Wolf,

---

[1] The Clerk of Court will be directed to amend the caption in this matter to reflect that Lynn Guyer is the current warden of the Montana State Prison.  In a federal habeas petition, a state prisoner must name the state officer having custody of him as the respondent.  *Ortiz-Sandoval v. Gomez*, 81 F. 3d 891, 894 (9th Cir. 1996) (citing Rule 2(a), 28 U.S.C. foll. §2254).

[2] The following factual summary is taken from the Montana Supreme Court's opinion in *State v. Russell*, 2008 MT 417, 347 Mont. 301, 198 P. 3d 271 (*Russell I*), and is presumed correct.  28 U.S.C. §2254(d)(2), (e)(1).  Russell does not present clear and convincing evidence to the contrary, thus, the Court adopts the factual recitations set forth by the state court.  See, *Vasquez v. Kirkland*, 572 F. 3d 1029, 1031, n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

although both underage at the time, were drinking whiskey at the residence of Erick Kuhn and various other locations around Billings, Montana. At some point in time, Russell stole a knife from Kuhn's apartment. Later, during the early morning hours of April 26, 2005, Russell and Spotted Wolf found themselves in back of the Saint Vincent De Paul Thrift Store in Billings. There they encountered Henry Rideshorse, who had a bottle of vodka. Russell and Spotted Wolf had some whiskey remaining. The three shared the liquor in a back alley, out of sight of law enforcement.

In the same small area where the three were drinking, several transients were sleeping. Spotted Wolf approached one of these men, Dale Wallin, and demanded money and alcohol. Wallin did not respond. Russell drew a knife and handed it to Spotted Wolf. Spotted Wolf slashed Wallin in the face and then returned the knife to Russell, directing him to "show me what you are made of man, show me what you can do." Russell proceeded to stab Wallin multiple times in the back.

Russell then proceeded with the knife further back in the alleyway where he encountered John Gewanski, asleep near a dumpster. Rideshorse and Spotted Wolf testified that they saw Russell approach Gewanski and heard Gewanski "make several grunting noises, as if he were being punched or stabbed." After suffering multiple stab wounds, Gewanski died in the makeshift shelter in which he had been sleeping.

2

Russell and Spotted Wolf turned their attention back to Wallin and began a second attack upon him.  Rideshorse intervened in an effort to protect Wallin. Russell punched Rideshorse and said to Spotted Wolf, "Let's do this guy, man." Spotted Wolf convinced Russell not to attack Rideshorse and the two fled. Rideshorse helped Wallin up and ran to the street to summon an officer for help. Wallin made his way to the Rescue Mission and was taken to the hospital.  Despite suffering multiple stab wounds, Wallin survived the attack.

Later that same morning, Spotted Wolf was found passed out outside a residential home in Billings, and authorities were called.  Spotted Wolf had blood on this clothing and a knife in his pocket.  Spotted Wolf was treated for alcohol poisoning and subsequently arrested.  Ultimately, Spotted Wolf pled guilty to one count of deliberate homicide by accountability, aggravated assault, and robbery. Spotted Wolf received a reduced sentence in exchange for his guilty pleas.

Russell was ultimately charged with the deliberate homicide of Gewanski, the aggravated assault of Wallin, robbery by accountability, and the aggravated assault of Gewanski by accountability.[3]  The deliberate homicide charge was brought under Mont. Code Ann. §45-5-102(1)(b), Montana's felony-murder rule.[4]

---

[3] Russell was originally charged with: Deliberate Homicide, Attempted Deliberate Homicide by Accountability, and Robbery by Accountability.  The charges were amended prior to trial.

[4] The statute provides that a person commits the offense of deliberate homicide if:
the person attempts to commit, commits, or is legally accountable for the attempt or commission of robbery, sexual intercourse without consent, arson, burglary, kidnapping, aggravated

The Information identified the aggravated assault of Wallin as the underlying predicate felony for the felony homicide.

Russell proceeded to trial.  He was represented by Penelope Strong (Strong), who was assisted by Matthew Claus (Claus).  At the close of trial, Strong requested an unanimity instruction – if the jury were to convict Russell of deliberate homicide under a felony murder theory, they must unanimously agree on the particular act(s) that Russell committed.  The instruction was refused; the state district court gave a general unanimity instruction instead.  Russell was convicted of all four counts.

Prior to sentencing, Russell moved to dismiss his conviction for aggravated assault, arguing that the conviction resulted in multiple punishments in violation of Art. II, Sec. 25 of the Montana Constitution and Russell's right to be free of double jeopardy.  The trial court denied the motion to dismiss.  Russell was sentenced to 80 years at the Montana State Prison for the homicide, with 10 of the years suspended.  On the three remaining counts,  Russell was sentenced to 10 years in prison, with the terms to run consecutively to the homicide sentence, but concurrently with each other.

---

kidnapping, felonious escape, assault with a weapon, aggravated assault, or any other forcible felony and in the court of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being.  M.C.A. §45-5-102(1)(b)(2005).

4

## II.    Procedural History

### A.    Direct Appeal

On appeal, Russell was initially represented by Shannon McDonald of the state Appellate Defenders Office.  Russell argued that the district court erred in denying his motion to dismiss the aggravated assault conviction because the felony homicide was predicated on the same assault.  Russell claimed the underlying felony should merge with the felony homicide.  Russell argued the trial court's refusal to dismiss placed him in double jeopardy for the same aggravated assault charge.[5]

Following the completion of the briefing, Koan Mercer of the Appellate Defender Office assumed representation of Russell.  Upon review of the record, Mercer believed a claim challenging the sufficiency of the evidence should have been presented.  Specifically, Mercer believed the state failed to prove that the death of Gewanski was committed in the course of the assault on Wallin.  Mercer requested supplemental briefing to raise this claim; his request was denied.

---

[5] Russell raised two additional arguments on direct appeal- neither of which is pertinent to his federal habeas proceedings.  Russell argued trial counsel's failure to attempt to exclude Rideshorse's testimony amounted to ineffective assistance of counsel.  The Court determined this claim was best suited for PCR proceedings.  See, *Russell I* at ¶35.  Russell also argued that his right to a unanimous jury was violated when the trial court refused his proposed unanimity instruction.  The Court rejected this claim and determined the jury was fairly instructed on the law, and the trial court did not abuse its discretion in refusing the proposed instruction.  *Id*. at ¶¶37-38, 42-43.

The Montana Supreme Court ultimately affirmed in part and reversed in part. The Court reversed the district court's denial of Russell's motion to dismiss his aggravated assault conviction. Because the aggravated assault was chosen as the predicate felony, the Court reasoned that the aggravated assault was an element of the felony homicide. See, *State v. Russell*, 2008 MT 417, 347 Mont. 301, 198 P. 3d 271 (*Russell I*); see also, (Doc. 20.) Thus, double jeopardy prohibited the State from convicting and punishing Russel again for the same aggravated assault. The Court otherwise affirmed Russell's conviction and sentence.

In a concurring and dissenting opinion, Justice Nelson argued that the assault on Wallin was not sufficiently causally related to the killing of Gewanski to justify the felony homicide charge. Justice Nelson believed these to be two entirely distinct events. Thus, the death of Gewanski was not "a natural and probable consequence" or "the natural or necessary result" of the assault on Wallin. *Id*. at ¶56. Justice Nelson thought the Court should have considered the validity of the felony homicide conviction, even though it was not properly presented on appeal. *Id*. at ¶49. He believed the felony homicide was improperly charged, and the conviction was invalid as a matter of law.[6] *Id*. at ¶¶ 50, 58.

---

[6] As set forth below, this was the same argument advanced by Mercer during oral argument on direct appeal: "I think the assaults on Mr. Wallin were completed and that, therefore, the assaults on [Gewanski] who was asleep down the alley in a different place were not 'in the course of' those assaults." See, *Russell I* at ¶47, (citing Mercer's response to a follow-up question from the Court). This was also essentially the same position adopted by Justices Cotter and McKinnon in their dissent on the postconviction appeal. "There was confusion – not agreement – about what

## B.     Postconviction (PCR) Proceedings

In 2010, Russell through counsel filed a PCR petition arguing: 1) his trial counsel provided ineffective assistance by failing to argue that the murder of Gewanski did not occur in the course of the assault on Wallin, and therefore, the facts did not support the charge of felony murder; and 2) appellate counsel provided ineffective assistance by failing to argue the aggravated assault on Wallin was not sufficiently causally related to the attack on Gewanski to support the felony murder charge.  See, (Doc. 7-21.)  Amended and second amended petitions were filed raising additional claims.[7]  (Docs. 7-23, 7-24, 7-25.)  On March 19, 2014, an evidentiary hearing was held.  See, (Doc. 7-33.)  Russell was represented in the proceedings by attorney Elizabeth Griffing.

Strong and Clause both testified at the hearing.  Additionally, both of Russell's appellate defenders Shannon McDonald and Koan Mercer testified.  One of the prosecutors from Russell's trial, Mark Murphy, provided testimony, as did Robert Kelleher, one of Brandon Spotted Wolf's attorneys.  See generally, (Doc. 7-

---

constituted the predicate felony for the felony murder charge.  In addition, there was a failure of proof of a causal connection between the two crimes so as to satisfy the requirements of the felony murder rule."  *Russell v. State*, 2016 MT 69, ¶41, 383 Mont. 60, 368 P. 3d 1171 (*Russell II*).

[7] The first Amended Petition added claims of: actual innocence, IAC for failure to offer exculpatory evidence, see (Doc. 7-23 at 3-8) and was prepared by counsel, while the Second Amended Petition was prepared by Russell pro se and filed on April 5, 2011.  (Doc. 7-24 & 7-35.) In the pro se petition, Russell raised various claims of Ineffective Assistance of Counsel.

33.)  While there was limited testimony relating to the various claims advanced in Russell's amended petitions, the hearing was focused on the validity and sufficiency of the claim regarding the charge of felony murder and the effectiveness of appellate counsel for not presenting the claim on direct appeal. See e.g., (Doc. 7-33 at 14-15.)

Mercer explained that he acquired the appellate case from McDonald after she had completed the briefing, but prior to the scheduled oral argument.  (Doc. 7-33 at 21.)  While preparing for argument, Mercer became troubled because he believed the State had not proven the felony murder charge.  *Id*. at 21-22.  Mercer did not think there was a causal connection between the assault on Wallin and the death of Gewanski.  *Id* at 22.  Therefore, Mercer requested supplemental briefing to raise the issue, but as set forth above, the Montana Supreme Court denied the request.  *Id*.  Mercer believed McDonald performed deficiently by not challenging the sufficiency of the evidence underlying the felony murder conviction on appeal. *Id*. at 23.

On July 7, 2014, the state district court issued its Findings of Fact and Conclusions of Law.  (Doc. 7-34.)  As to the issue of timeliness, the court determined that even if Russell's petition was filed three-days late, it was in the interest of justice to address the merits of the petition.  *Id*. at 12, ¶5.[8]

---

[8] Apparently, Russell initially attempted to file his PCR petition on March 15, 2010, but it was

The district court next concluded that there was no defect in the felony

murder charge or the sufficiency of the proof relative to the charge.  Accordingly,

the court found neither trial counsel nor appellate counsel were ineffective.  In

making its determination, the court acknowledged that there must be a causal

connection between the underlying felony and the resulting death to satisfy the

felony-murder rule:

> For the felony-murder rule to apply, it is necessary that the homicide be a
> natural and probable consequence of the commission or attempt to commit
> the felony; that the homicide be so closely connected with such other crime
> as to be within the *res gestae* thereof; or the natural or necessary result of the
> unlawful act; or that it be one of the causes.***
>
> Something more than a mere coincidence of time and place between the
> wrongful act and the death is necessary.  It must appear that there was such
> actual legal relation between the killing and the crime committed or
> attempted that the killing can be said to have occurred as a part of the
> perpetration of the crime, or in furtherance of an attempt or purpose to
> commit it.

*Id*. at 16, ¶ 29 (quoting *State ex rel Murphy v. McKinnon*, 176 Mont. 120, 126-27,

556 P. 2d 906, 910 (1976) (quoting Wharton's Criminal Law and Procedure, vol.

1, §252).

The district court determined that the causal connection was satisfied,

because Russell killed Gewanski in furtherance of the initial aggravated assault

---

rejected by the Clerk of Court because he failed to provide a filing fee or a petition to proceed in
forma pauperis.  On March 18, 2010, Russell properly re-submitted the PCR petition.  (Doc. 7-34
at 12, ¶4.)

Spotted Wolf inflicted upon Wallin.  The court pointed out there was "no break in time or space," and the "events took place within feet of one another."  *Id.* at 17.  After committing the initial aggravated assault on Wallin, "Russell then acted immediately in further of that initial aggravated assault by further escalating the violence against another victim."  *Id.*  In short, the court found "[t]he homicide occurred because of Spotted Wolf's aggravated assault" and "in the course of the forcible felony or flight thereafter."  *Id*. at ¶31, citing M.C.A. §45-5-102(1)(b).

Additionally, the district court found appellate counsel, McDonald, did not provide ineffective assistance by failing to raise a claim challenging the sufficiency of the evidence vis-à-vis the felony-murder rule on direct appeal.  *Id*. at ¶33.  The court determined McDonald's interpretation of the evidence was reasonable, specifically her conclusion that the homicide and the assault were inextricably intertwined and that the homicide would not have occurred but for Spotted Wolf's initial assault of Wallin.  *Id*. at ¶34.  The district court, therefore, determined McDonald performed reasonably relative to her analysis of the felony-murder rule on direct appeal.  But even if she had not provided effective assistance, the court found Russell failed to demonstrate a reasonable probability of a different outcome.  *Id*. at 18, ¶¶35-36.  The district court also determined the fact that Mercer would have handled the briefing on direct appeal differently, was insufficient to establish ineffective assistance of appellate counsel.  *Id*. at ¶37.

10

## C.    Postconviction Appeal

Although there were additional claims presented in Russell's PCR petition, he only challenged the effectiveness of the representation provided by both trial and appellate counsel.  See generally, (Doc. 7-35).

In relation to trial counsel's performance, Russell argued counsel failed to adequately research and understand the law of felony murder, and then proceeded to trial based upon a "fundamental misunderstanding" of the elements.  (Doc. 7-35 at 21-22.)  Russell argued there must not only be a correlation of time and place between the predicate felony and resulting death, but also a causal connection between the two events to establish the requisite transferred intent of felony murder.  *Id.* at 22.  Russell asserted the attorneys involved in his trial, as well as the district court, misunderstood the facts and assumed "close proximity of time and place" constituted a sufficient connection.  *Id.* at 25-26.

Russell argued appellate counsel, McDonald, similarly relied upon the "same transaction" analysis and failed to examine the charge of felony murder further.  *Id.* at 31.  Russell maintained that had McDonald challenged the sufficiency of the proof for the felony murder charge, the Montana Supreme Court would have squarely addressed the issue on appeal, rather than looking at the claim via the lens of double jeopardy or unanimity.  *Id.* at 32.

The Montana Supreme Court found Russell's arguments unavailing.  See

11

generally, *Russell v. State*, 2016 MT 69, 383 Mont. 60, 368 P. 3d 1171 (*Russell II*);

(Doc. 7-38.)  In affirming the district court, the Court noted the assault and murder

occurred in close proximity of time and place, and the murder "flowed in a

continuous series of action from the assault against Wallin by both Spotted Wolf

and Russell."  *Id*. at ¶33.  Accordingly, the Court found Russell was properly

charged and convicted of felony murder.  Thus, Russell failed to establish the

assistance provided by trial counsel fell below an objective standard of

reasonableness, and accordingly did not overcome the presumption that trial

counsel's performance fell within the range of reasonable assistance.  *Id*. at ¶34.

Further, having presided over both the trial and the postconviction proceedings, the

district court was in a unique position to form an evaluation of trial counsel's

performance.  The Supreme Court also found that Russell failed to establish the

outcome of the trial would have been different had trial counsel argued the facts

were insufficient for felony murder.  *Id*. at ¶35.

In relation to Russell's second claim regarding the performance of appellate

counsel, the Supreme Court determined the same considerations led to the

conclusion that the lower court properly denied Russell relief.  McDonald

understood the felony-murder law, she reviewed the trial record and determined

the evidence would not support an argument that a charge of felony murder lacked

evidentiary or factual support.  *Id*. at ¶38.  Instead, McDonald adopted a strategy

12

that proved successful on appeal; Russell could not be convicted for both the felony murder and the underlying predicate felony. *Id.* The Court determined that Mercer's disagreement with McDonald's appellate strategy only demonstrated that attorneys might disagree on the application of the facts of Russell's case to the charge of felony murder. *Id.* The Court held the lower court properly determined the assistance provided by McDonald did not fall below an objective standard of reasonableness and affirmed the denial of this claim. *Id.* at ¶39.

## III.   Russell's Claims

In the instant petition, Russell claims: 1) trial counsel provided ineffective assistance by failing to challenge the felony murder charge, (Doc. 26 at 20-25);  2) appellate counsel provided ineffective assistance by failing to argue there was insufficient evidence to support Russell's felony murder conviction, (*id.* at 25-27); and 3) Russell's right to due process was violated because he was unconstitutionally charged and convicted of felony murder despite there being no causal connection between the predicate felony and Gewanski's death. *Id.* at 27-28.

## IV.   Analysis

Respondent initially contends that Russell's federal petition is untimely and that he is not entitled to tolling. See generally, (Doc. 28 at 42-48.) As set forth above, despite the purported tardy filing of Russell's PCR petition, the state courts

13

allowed Russell's petition to proceed.  For purposes of analysis in these proceedings, the Court also elects to not first resolve this procedural issue, see *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997), and instead consider the merits of Russell's petition.

As to the merits of Russell's petition, the Court recommends Mr. Russell's third claim be dismissed as procedurally defaulted without excuse, and that his first two claims be denied because they do not survive deferential review under 28 U.S.C. §2254(d).

### A.    Exhaustion/Procedural Default of Claim 3

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review.  *Id.* at 845.  "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based.  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim does not satisfy the requirement of fair presentation.  *See Duncan v. Henry*, 513 U.S. 364,

14

365-66 (1995) (per curiam).  General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient.  *See Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).  To properly exhaust a claim, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62.  Even if a petitioner's claim is procedurally defaulted, however, a federal district court may still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court, *Schlup v. Delo*, 513 U.S. 298, 329 (1995); or (2) a showing of adequate legal cause for the default and prejudice arising from the default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Although not acknowledging that his due process claim is procedurally defaulted, Russell concedes the claim was not explicitly identified as a stand-alone claim in his opening brief on appeal from the denial of PCR.  Nevertheless, Russell

maintains it was presented in the context of the IAC claims – that leaving Russell's felony murder conviction intact would violate his right to due process and a fundamentally fair trial and appeal.  See, (Doc. 26 at 27); see also, (Doc. 7-35 at 32-33.)

While Russell may have referenced a potential due process violation, it is undisputed that the Montana Supreme Court did not consider or address the merits of a due process claim.  See, (Doc. 38 at 7, fn.1).[9]  Russell did not fairly present this claim to the Montana Supreme Court; accordingly, the Court did not consider the merits of a potential due process claim.  This Court can envision no other mechanism by which Russell could now present the claim to the Montana Supreme Court for consideration.  Thus, his due process claim is procedurally defaulted.

In its response to Russell's Amended Petition, Respondent argued the claim is now procedurally defaulted and should be dismissed.  (Doc. 28 at 8, 49-51.) Despite being provided additional time to file a Reply, Russell elected not to do so. See e.g., (Doc. 30.)  Thus, Russell has provided no basis upon which this Court might find an exception to this procedural bar and consider the merits of the due process claim.  Accordingly, the claim is procedurally defaulted without excuse

---

[9] The Montana Supreme Court stated, "[t]he District Court noted that Russell's petition for postconviction relief raised numerous other allegations that were not addressed at the [PCR] hearing, but that were also not withdrawn.  In the present appeal Russell has likewise focused on the IAC claims and has not addressed the other issues.  We have no basis to review any other claims and decline to do so."

and should be dismissed.

**B.     Application of 28 U.S.C. §2254(d) to Claims 1&2**

To be eligible for federal habeas corpus relief, a state prisoner must establish

that he is "in custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. §2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).

A state prisoner "whose claim was adjudicated on the merits in state court is not

entitled to relief in the federal court unless he meets the requirements of 28 U.S.C.

§2254(d)."  *Price v. Vincent*, 538 U.S. 634, 638 (2003).  This Court's analysis of

the merits of Russell's claims is constrained by the applicable standard of review.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)

applies to Russell's petition.  AEDPA substantially limits the power of federal

courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777

(9th Cir. 2014), and "demands that state court decisions be given the benefit of the

doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  Thus, if a

petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's

highly deferential standards kick in."  *Davis v Ayala*, __ U.S. ___, 135 S. Ct. 2187,

2198 (2015) (citations omitted).

Under the deferential standard of AEDPA, a federal court may not grant a

prisoner's petition on a claim that was decided on the merits in state court, unless

the state court's decision: 1) "was contrary to federal law then clearly established

in the holdings of [the United States Supreme Court]"; 2) "involved an unreasonable application of such law"; or 3) "was based on an unreasonable determination of the facts in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (internal quotation marks omitted); see also, 28 U.S.C. § 2254(d), *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).[10]

"'[C]learly established Federal law'... is the governing legal principle or principles set forth by the Supreme Court [in its holdings] at the time the state court renders its decision." *Lockyer,* 538 U.S. at 70-71; see also, *Carey v. Musladin*, 549 U.S. 70, 74 (2006).  In addition, the Supreme Court decision must "squarely address [ ] the issue in th[e] case; otherwise, there is no clearly established Federal law for purposes of review under AEDPA." *Moses v. Payne*, 555 F. 3d 742, 754 (9th Cir. 2009), quoting *Wright v. Van Patten*, 552 U.S. 120, 125 (2008).  If no clearly established federal law exists, the inquiry is at an end and the court must defer to the state court's decision. *Carey*, 549 U.S. at 70; *Wright*, 552 U.S. at 126.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

---

[10] 28 U.S.C. §2254(d) is a gateway.  If a petitioner satisfies either subsection (1) or (2) for a claim, then the federal court considers that claim de novo.  See, *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (when section 2254(d) is satisfied, "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); see also, *Cone v. Bell*, 556 U.S. 449, 472 (2009).

Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-12; see also *Lockyer*, 538 U.S. at 72. "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id*. at 405.

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. A state court decision involves "an unreasonable application of clearly established Federal law" if "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in a federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Id*. at 103.

As to claims of unreasonable determination of the facts, federal courts review purely factual questions that were resolved by the state court under §2254(d)(2). *Lambert v. Blodgett*, 393 F. 3d 943, 978 (9th Cir. 2004). "[T]he

question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Id*. Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record.  Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence…that the process employed by the state court is defective… or that no finding was made by the state court at all." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004), abrogated on other grounds by *Murray v. Schiro*, 745 F. 3d 984, 999-1000 (9th Cir. 2014).  If "reasonable minds reviewing the record might disagree about the finding in question, 'on habeas review that does not suffice to supersede the trial court's …determination.'" *Brumfield v. Cain*, __ U.S. __, 135 S. Ct. 2269, 2277 (2015) (citations omitted).  A state court's factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence."  28 U.S.C. 2254(e)(1).

In short, "[f]or relief to be granted, a state court merits ruling must be so lacking in justification that there was an error…beyond any possibility for fair minded disagreement." *Bemore v. Chappell*, 788 F. 3d 1151, 1160 (9th Cir. 2015) (internal quotations and citations omitted.)  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'…and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766,

773 (2010).  The standard is "'difficult to meet,'" and a "petitioner carries the

burden of proof."  *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Russell's remaining two claims allege ineffective assistance of counsel.  The

clearly established federal law for ineffective assistance of counsel claims was

determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668

(1984).  Under the two-pronged framework of *Strickland*, the Sixth Amendment

guarantee of the right to counsel in a criminal proceeding is violated if "counsel's

performance was deficient" and "the deficient performance prejudiced the

defense." 466 U.S. at 687.  In assessing a claim that counsel's representation did

not meet the constitutional minimum, the court is to "indulge in a strong

presumption that counsel's conduct f[ell] within the wide range of professional

assistance."  *Id.*, 466 U.S. at 689.   A petitioner bears the burden of showing the

state court applied *Strickland* to the facts of his case in an objectively unreasonable

manner.  See, *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Therefore, this Court's review of the Montana Supreme Court's

determination that neither trial nor appellate counsel performed deficiently is

"doubly" deferential.  *Strickland* requires state courts to give deference to choices

made by counsel, and AEDPA, in turn, requires this Court to defer to the

determinations of state courts.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011)

(quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Because Russell has not established that the Montana Supreme Court's adjudication of his remaining claims was contrary to or involved an unreasonable application of *Strickland*, or resulted from an unreasonable determination of the facts based upon the state court record, this Court must afford deference to the Montana Supreme Court's decision.

### 1.    Claim 1 – Ineffective Assistance of Trial Counsel

Russell argues trial counsel performed deficiently by failing to recognize that he had been improperly charged with felony murder.  He maintains this deficient performance was prejudicial because the State was relieved of its burden to prove he intended to kill Gewanski or that the death of Gewanski was causally related to the assault on Wallin.  (Doc. 26 at 21.)  Russell points out that by statute, "in the course of the forcible felony" requires causation between the underlying felony and the death.  *Id*. at 22.  Russell argues there was no proof of the causal element in his case, because no evidence demonstrated that Gewanski died "in the course" of the assault on Wallin or during the "flight" from the assault.  *Id*. at 23-24.

Russell asserts trial counsel failed to properly research and/or understand the need for this causal connection between the assault on Wallin and the death of Gewanski.  Russell argues this deficient performance is evident by trial counsel: not including this specific argument in their motion to dismiss; failing to submit a

jury instruction on causation; and failing to make the causal connections argument during closing. *Id*. at 24. Russell asserts this failure undermines confidence in his trial. *Id*. Russell further argues the Montana Supreme Court also misapprehended the proof required to establish felony murder, and in so doing, erred in its holding that Russell had been provided effective assistance of trial counsel. *Id*. at 25.

In its response, Respondent points out that Russell has failed to articulate under what prong of AEDPA he believes the Montana Supreme Court's decision warrants federal review: 28 U.S.C. §2254 (d)(1) or §2254 (d)(2). Instead, Russell presents his claim as if seeking de novo review before this Court. See, (Doc. 28 at 56.) But, as set forth above, de novo review is not the standard this Court is to apply. See, fn. 10, supra. Russell must first satisfy section 2254(d).

The Montana Supreme Court correctly identified the applicable United States Supreme Court precedent and affirmed the two-part test articulated in *Strickland* applied to the review of Russell's IAC claims. See, (Doc. 7-38 at ¶¶24-25.) Thus, the Montana Supreme Court did not apply a legal standard "contrary to" clearly established federal law. See, 28 U.S.C. §2254 (d)(1); *Williams*, 529 U.S. at 405-06.

Nevertheless, Russell could meet his burden under 28 U.S.C. §2254 (d)(1), if he demonstrates the Montana Supreme Court's decision involved an "unreasonable application" of clearly established law. But Russell does not clearly

23

articulate this argument.  Rather, he appears to argue that the Montana Supreme Court misinterpreted and misapplied its own state felony murder statute which, in turn, served to excuse Strong's deficient performance.

To the extent that Russell seeks this Court's review of the validity and application the state felony murder statute to his case, this Court is bound by the Montana Supreme Court's interpretation of MCA §45-5-102(1)(b).  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); see also, *Carey*, 549 U.S. at 70; *Wright*, 552 U.S. at 126.  Both the state district court and the Montana Supreme Court found Russell was properly charged with felony murder, and that the evidence presented at trial supported Russell's conviction.

Both courts also concluded that Strong's performance was not deficient. This conclusion is not unreasonable.  Strong researched the application of felony murder in the case.  (Doc. 7-33 at 21: 23-25.)  She explained her concerns with the amended charge of deliberate homicide under the felony murder rule: "I always had concerns about felony murder being an unfair extension of criminal liability, if you will, and the fact that it makes a homicide easier to prove in certain situations when you're defending a homicide case."  (Doc. 7-33 at 22: 13-17.)  But Strong also indicated that she understood the manner in which the case was charged:

24

"there is an allegation that in the course of another felony, which is alleged to be aggravated assault, that [Russell], as it's put, cut, stabbed or otherwise assaulted [Gewanski]." (Doc. 7-33 at 21: 12-15.)[11]  Strong also understood the state's theory under the felony murder rule charge was that the events were quick in time and involved the actions of two people and two victims, (Doc. 7-33 at 47: 10-13), and that if Spotted Wolf had not started the whole event, Russell would not have killed Gewanski. *Id.* at 48: 14-18.

Strong attempted to address the legal concerns stemming from the felony murder charge via an unanimity instruction, as explained in her trial brief:

> Mr. Russell is charged with the main offense of felony murder, and the underlying predicate felony for the State's retooled charges is purportedly the aggravated assault of Dale Wallin.  Further compounding the inexact nature of this charge is that the State has charged the various acts of the allegedly criminal conduct largely in the alternative.  That is the charging document states, in part:
>
>> "the Defendant committed or was accountable for the commission of aggravated assault against Dale Wallin, then in the course of…Aggravated Assault or flight thereafter, Rusty Lee Russell, or another person legally accountable for the crime, stabbed, cut, or otherwise assaulted John Gewanski, using a knife or other edged weapon, causing his death…"

See, (Defense Trial Brief, Doc. 7-6 at 5-6) (citing Amended Information.)  Strong urged the court to consider a special unanimity instruction and verdict form that

---

[11] See also, Strong Affidavit: "As for the felony murder issue, I believed the two crimes, the assault on Dale Wallin and the fatal stabbing of Mr. Gewanski to be extremely close in time, place, and likeness of the assaults."  (Doc. 7-32 at 2, ¶3.)

would require the jury to consider and unanimously agree upon each of the following: 1) whether Russell committed the underlying assault himself or was legally accountable for the assault; 2) whether in the course of committing the assault or flight thereafter; 3) Russell or another person legally accountable caused Gewanski's death by stabbing or cutting him.  *Id*. at 6-7.

At the close of the state's case, Strong also moved for dismissal of all charges against Russell arguing that the evidence was insufficient to make out a prima facie case.  (Doc. 7-13 at 172.)  The trial court denied the motion, finding the State had presented sufficient evidence for the case to go to the jury.  *Id*. at 173.

During settling of the instructions, Strong reiterated her understanding of the application of the felony murder charge in her request for a specific unanimity instruction:

> And it is our argument that under this particular charge, is a very unusual felony murder charge, but the underlying predicate felony is not the act that resulted in the death of the victim, John Gewanski; rather it has been charged – our position is that as a course of continuous conduct, it may not be years as in [the *Weaver* case],[12] it may be minutes, but we have two distinct crimes.  We have – the State has specifically alleged, if you look at Count 1, that by committing the aggravated assault on Mr. Wallin, and then providing the knife and the exhorting by Brandon Spotted Wolf of our client to stab Mr. Gewanski, that thereby there is an act of felony murder, or reasonable and natural consequence of the assault on Mr. Wallin.

---

[12] In *State v. Weaver*, 1998 MT 176, 290 Mont. 58, 964 P. 2d 713, the Montana Supreme Court held that, when a defendant is charged "with a series of unrelated allegations of sexual misconduct taking place over a period of years," the district court "where appropriate" must issue a unanimity instruction.  *Weaver*, ¶¶38-39.

We think that presents a complex unanimity issue, because typically when
we see felony murder, it's an assault on a victim who later dies as a
reasonable consequence.  So that's part of our factual basis for making this
assertion.

(Doc. 7-14 at 58-59.)  Defense counsel continued this theme during closing:

"you'll have the benefit of the instructions, but you must have a unanimous

agreement in all of those elements."   (Doc. 7-14 at 125: 4-6.)

In addition, throughout trial the defense attacked the credibility and

believability of the State's main witnesses – Wallin, Rideshorse, and Spotted Wolf.

The theory of the defense was one of general denial, see e.g. (Doc. 7-33 at 41: 7-

11), while attempting to place the responsibility for the crimes squarely on Spotted

Wolf.  See e.g., (7-14 at 136-144.)[13]

Accordingly, while Russell's defense appreciated that separate acts had

affected separate victims, the defense viewed the actions that unfolded in the

alleyway as a continuous event.  Strong indicated she understood the state's theory

under the felony murder rule was that the events were quick in time and involved

the actions of two people and two victims, (Doc. 7-33 at 47: 10-13), and that if

---

[13] The defense argued that despite claiming he never came within five feet of Gewanski,
Gewanski's blood was found on Spotted Wolf's jeans, (Doc. 7-14 at 137-38); Spotted Wolf was
found in possession of the knife with both victims' blood on it, (id. at 138-39); he attempted to
minimize his alcohol consumption (id. at 140-41); he violently lunged and/or attempted to attack
the first responders and officers that attempted to assist him in the morning following the attacks
(id. at 141-42); he made a spontaneous statement to Detective Lund, "Do you think I killed
somebody?" (id. at 142-43); in jail calls to his partner he disclosed that he "fucked up" and
believed he was going to "get a lot of time" for his acts (id. at  142-43);  and he received a very
lenient sentence for his cooperation, (id. at 143-44).

Spotted Wolf had not started the whole event, Russell would not have killed Gewanski. *Id*. at 48: 14-18. Of course, the defense also argued that the state did not proven that Russell killed Gewanski beyond a reasonable doubt, but rather Spotted Wolf was the guilty party.

To the extent Russell asserts that the Montana Supreme Court applied *Strickland* incorrectly, even if this Court were to agree, that is insufficient to grant relief. See, *Bell v. Cone*, 535 U.S. 685, 698-699 (2002). Russell has the burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Visciotti*, 537 U.S. at 24-25; *Lockyer*, 538 U.S. at 75-76. Russell has not met this burden.

As set forth above, the state courts determined Strong performed proficiently. Russell has not demonstrated that Strong "made errors so serious that [she] was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Strong explained her review of the case, her understanding of the charges, and her decision to defend it in the manner which she did. While Russell now argues that she should have proceeded in a different manner or operated under a different defense theory, Russell has not established that Strong's actions were unreasonable or that she performed deficiently. Moreover, strategic decisions, such as the choice of a defense or which witnesses or other evidence to present, "are virtually unchallengeable" if "made after

28

thorough investigation of law and facts relevant to plausible options." *Id*. at 690.

As both prongs of *Strickland* must be satisfied to establish a constitutional violation, a failure to satisfy either requires that an ineffective assistance of counsel claim be denied. *Id*. at 697.  A federal habeas court considering an ineffective assistance of counsel claim need not address the prejudice prong of the Strickland test "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F. 3d 732, 737 (9th Cir.), cert denied, 525 U.S. 839 (1998).

Nonetheless, Russell also cannot make an adequate showing under the second prong.  To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome." *Id*.  Respondent argues that, even if Strong would have raised and strenuously argued in her motion for a directed verdict that there was no causal link between the aggravated assault and the homicide, the trial court would have determined that this was a question for the jury to decide.  See, (Doc. 28 at 65.) The Court agrees; Russell cannot demonstrate *Strickland* prejudice.  Russell has not established it was unreasonable for the Montana Supreme Court to decide that Russell failed to demonstrate that the outcome of his trial would have been

different had Strong argued the facts were insufficient to sustain the felony murder charge.

For these reasons, the Montana Supreme Court could reasonably have found that trial counsel's performance was not objectively unreasonable, and that there was no reasonable probability of a different outcome absent counsel's alleged errors. *Strickland*, 466 U.S. at 687-98. Additionally, fair-minded jurists could disagree over the correctness of the Montana Supreme Court's decision. Accordingly, the Montana Supreme Court's denial of this claim was not contrary to, or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d). This claim should be denied.

### 2.    Claim 2 – IAC of Appellate Counsel

The Sixth Amendment guarantees the right to effective representation on direct appeal. See, *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). Effective legal assistance does not mean that appellate counsel must appeal every question of law and raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). But appellate counsel's performance must meet prevailing professional norms. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986).

Russell contends appellate counsel rendered ineffective assistance by failing to raise a challenge to the sufficiency of the evidence on appeal. To make such a

showing, Russell must establish that appellate counsel's performance was objectively unreasonable, which requires him to demonstrate that counsel acted unreasonably in failing to discover and brief a meritorious issue. *Moorman v. Ryan*, 628 F. 3d 1102, 1106 (9th Cir. 2010), cert. denied, 565 U.S. 921 (2011). Next, Russell must show prejudice; that is, demonstrating a reasonable probability that, but for appellate counsel's failure to raise the sufficiency of the evidence claim, he would have prevailed in his appeal. *Id*. The Ninth Circuit has discussed the application of *Strickland* to ineffective assistance of appellate counsel claims:

> [t]hese two prongs partially overlap…In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy…Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason – because she declined to raise a weak issue.

*Miller v. Keeney*, 882 F. 2d 1428, 1434 (9th Cir. 1989); see also, *Bailey v. Newland*, 263 F. 3d 1022, 1028-29 (9th Cir. 2001). The question is whether the unraised issue, if raised, would have "led to a reasonable probability of reversal." *Id*. at 1434-35.

As a preliminary matter, it does not appear that Russell could establish a reasonable probability of reversal of his felony homicide conviction. As set forth above, the state district court and the Montana Supreme Court both determined

Russell was properly charged with felony murder, and that the evidence presented

at trial supported Russell's conviction.

Moreover, appellate counsel Shannon McDonald did not fail to discover the

sufficiency of the evidence issue.  In her affidavit, McDonald explained:

> I did not interpret the testimony presented to permit an argument that the
> assaults on one victim were a separate transaction from the homicide of the
> other victim, or that there was a temporal break between the attacks.  My
> memory of the evidence presented was that the crimes occurred in a short
> period of time, in a relatively small place, with the victims close together.

(Doc. 7-27 at 69, ¶9.)  Further, at the PCR hearing, McDonald explained her view

that the two attacks were inextricably tied together and did not support a challenge

to the sufficiency of the evidence:

> I think that you would have to make an argument and – if my understanding
> is correct, that the argument was that it was a separate transaction, the
> underlying felony was a separate transaction from the – the murder, I that
> that you really have to explain the facts in a way that didn't – wasn't
> consistent with my reading of them.
>
> You would have to argue that there was a – that there was some sort of break
> in time that would make it separate.  And that – that just wasn't consistent
> with what I read, having looked at the testimony given at trial, and the
> photographs of the area, and I think there was a diagram, I remember there
> being a diagram, and it just appeared to me to be – a small – physically small
> area.

(Doc. 7-33 at 99: 8-20.)  McDonald disagreed with Mercer's assessment of the

applicability of the felony murder rule, and with his decision to attempt to raise the

sufficiency issue prior to oral argument.  (*Id*. at 98-99.)  The Montana Supreme

Court noted that, aside from Mercer, the district court and all of the attorneys

involved on both sides of the prosecution "generally agreed about the facts and how they related to felony murder."  See, *Russell II*, at 13, ¶29.[14]

McDonald also noted that the double jeopardy claim she presented on appeal was successful, and the Montana Supreme Court vacated Russell's aggravated assault conviction.  (Doc. 7-27 at 68, ¶7.)  As Respondent observed, advancing an argument that the homicide of Gewanski and the aggravated assault of Wallin were two separate acts, while at the same arguing the two acts were part of the same transaction, would have been contrary to the double jeopardy argument that ultimately prevailed on direct appeal.  See e.g., (Doc. 28 at 63, f.n. 5.)

Russell has failed to demonstrate that McDonald provided deficient assistance or that a sufficiency claim would have prevailed on appeal.  Thus, the Montana Supreme Court could reasonably have found that appellate counsel's performance was not objectively unreasonable, and that there was no reasonable

---

[14] For example, Prosecutor Mark Murphy, when asked about the relationship between the aggravated assault on Wallin and the death of Gewanski explained:  "Well, it – it's all part of a kind of seamless whole, I mean there isn't any break in the action, it happened in a very, very short time span, it happened in a very small area; and Brandon Spotted Wolf's statement that he wanted to get alcohol or money from Mr. Wallin and confronted him and said, ['] Give me your money, give me your alcohol.[']  Mr. Wallin responded that, [']What are you, a dummy, you think I'd have anything like that.[']  And at that point the aggravated assault occurred with the knife and everything else flowed from that in a very short time span and in a very small area. And so, the underlying felony was the precipitating event."  (Doc. 7-33 at 118-119.) Additionally, both attorneys for Spotted Wolf submitted affidavits indicating, "We carefully examined the charging documents and the factual and legal basis for the charges.  We concluded the State's felony-murder charging decision was appropriate under the factual circumstances of this case and concluded the State could prove the charges beyond a reasonable doubt."  (Doc. 7-27 at 56, 62.)

probability of a different outcome absent appellate counsel's failure to raise the sufficiency challenge. *Strickland*, 466 U.S. at 687-98. Additionally, fair-minded jurists could disagree about the correctness of the decision. *Richter*, 562 U.S. at 162.

Accordingly, the Montana Supreme Court's denial of this claim was not contrary to, or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d). This claim should also be denied.

## V.     Conclusion

Russell's petition should be denied for lack of merit. His ineffective assistance of counsel claims do not survive deferential review under AEDPA, and his due process claim is procedurally defaulted without excuse.

## VI.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Russell has not made a substantial showing that he was deprived of a constitutional right.  Accordingly, this Court must afford deference to the Montana Supreme Court's resolution of Russell's IAC claims under the doubly deferential standards required by the application of 28 U.S.C. § 2254(d) and *Strickland*. Russell's third claim is procedurally defaulted without excuse.  Thus, there are no close questions and there is no reason to encourage further proceedings in this Court.  Reasonable jurists would find no reason to dispute this Court's procedural ruling.  A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## ORDER

The Clerk of Court is directed to amend the caption in this matter to name Lynn Guyer, the current warden of the Montana State Prison, as the proper Respondent.

## RECOMMENDATION

1.  Russell's Amended Petition (Doc. 26) should be DENIED.

2.  The Clerk of Court should be directed to enter judgment in favor of

Respondent and against Petitioner.

3.  A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT**
**TO FINDINGS & RECOMMENDATION**
**AND CONSEQUENCES OF FAILURE TO OBJECT**

Mr. Russell may object to this Findings and Recommendation within 14

days.  28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

novo determination by the district judge and/or waive the right to appeal.

Mr. Russell must immediately notify the Court of any change in his mailing

address.  Failure to do so may result in dismissal of his case without notice to him.

DATED this 15th day of May, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge