IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED

AUG 27 2019

Clerk, U S District Court
District Of Montana
Billings



| | |
|---|---|
| RUSTY LEE-RAY RUSSELL,<br><br>Petitioner,<br><br>vs.<br><br>LYNN GUYER, WARDEN OF<br>MONTANA STATE PRISON,<br><br>Respondent. | CV 16-34-BLG-SPW-TJC<br><br>ORDER ADOPTING<br>MAGISTRATE'S FINDINGS<br>AND RECOMMENDATIONS |

This matter comes before the Court on an Amended Petition for Writ of Habeas Corpus filed by Petitioner Rusty Lee-Ray Russell (Russell) pursuant to 28 U.S.C. § 2254. (Doc. 26.) United States Magistrate Judge Cavan filed Findings and Recommendations on May 15, 2019. (Doc. 31.) Judge Cavan recommended the Court deny Russell's petition. (*Id.* at 35.) Russell filed objections to Judge Cavan's Findings and Recommendations on June 13, 2019. (Doc. 34.) For the following reasons, the Court adopts Judge Cavan's Findings and Recommendations. Russell's Amended Petition for Writ of Habeas Corpus is DENIED.

I. **Factual and Procedural Background**

Judge Cavan summarized the initial factual background in Russell's case by referring to the Montana Supreme Court's opinion in *State v. Russell*, 198 P.3d 271

1

(Mont. 2008) [hereinafter *Russell I*]. (Doc. 31 at 1.) Judge Cavan summarized the procedural history of the case through Russell's second appeal, *Russell v. State*, 368 P.3d 1171 (Mont. 2016) [hereinafter *Russell II*], where the Montana Supreme Court affirmed the state district court's denial of Russell's petition for postconviction relief. Russell does not object to the factual and procedural background Judge Cavan provided. The Court adopts those findings in full and restates the factual and procedural background relevant to resolving Russell's objections.

On April 25, 2005, Russell and an acquaintance named Spotted Wolf spent the day drinking at various locations around Billings. In the early morning hours of April 26, the two found themselves in an alley-type area behind a thrift store near downtown Billings. There they met Henry Rideshorse, and the three began sharing a bottle of vodka. After a time, the three noticed a sleeping transient, Wallin. Spotted Wolf confronted Wallin, demanding money and alcohol. Wallin did not respond. Russell drew a knife and handed it to Spotted Wolf. Spotted Wolf slashed Wallin in the face and gave the knife back to Russell, directing him to "show me what you are made of man, show me what you can do." Russell stabbed Wallin several times in the back.

After the attack, Russell stepped further into the alleyway where he spotted another sleeping transient, Gewanski. Russell beat Gewanski and stabbed him several times. Gewanski later died of his injuries. Russell and Spotted Wolf turned

their attention back to Wallin and began a second attack, but this time Rideshorse intervened in an effort to protect Wallin. Russell punched Rideshorse and pressed Spotted Wolf, "Let's do this guy, man." Spotted Wolf convinced Russell not to attack Rideshorse, and the two fled. Rideshorse helped Wallin to a nearby street to summon an officer for help. Despite suffering multiple stab wounds, Wallin survived.

The State of Montana charged Russell with the deliberate homicide of Gewanski under Montana's felony murder statute, Mont. Code Ann. § 45–5–102(1)(b)[1]; the aggravated assault of Wallin; accountability for Spotted Wolf's robbery of Wallin; and accountability for Spotted Wolf's aggravated assault of Wallin. The State identified Russell's aggravated assault of Wallin as the underlying predicate felony for the felony murder. A jury convicted Russell on all four counts.

Before sentencing, Russell's trial counsel, Penelope Strong, moved to dismiss his aggravated assault conviction, arguing the conviction violated his right to be free of double jeopardy because the aggravated assault charge was both a separate charge

---

[1] Mont. Code Ann. § 45–5–102(1)(b) states, "A person commits the offense of deliberate homicide if . . . the person attempts to commit, commits, or is legally accountable for the attempt or commission of" a forcible felony, "and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being." The statute lists several forcible felonies that can apply, including robbery and aggravated assault. Felony murder in Montana differs from standard deliberate homicide because it does not require the person to "purposely or knowingly" cause the death. §§ 45–5–102(1)(a) and (b).

3

and the predicate offense for his felony murder conviction. The trial court rejected Russell's argument.

Russell appealed his convictions to the Montana Supreme Court where Shannon McDonald of the Appellate Defenders Office initially represented him. McDonald argued the trial court erred by denying Russell's motion to dismiss his aggravated assault conviction for the same reasons Strong argued to the trial court. McDonald argued the aggravated assault and felony murder charges should merge.

Following the completion of appellate briefing, Koan Mercer assumed the role of Russell's appellate counsel after McDonald left the Appellate Defenders Office. Mercer identified an argument for Russell on appeal that he believed Strong and McDonald had overlooked—that the underlying aggravated assault of Wallin lacked the causal connection to Gewanski's death needed to justify Russell's felony murder conviction. Mercer requested supplemental briefing to raise the claim, but the Montana Supreme Court denied his request.

In *Russell I*, the Montana Supreme Court reversed the district court's denial of Russell's motion to dismiss his aggravated assault conviction. The Court agreed with both Strong and McDonald's assessment that double jeopardy prohibited the State from convicting Russell for the same aggravated assault that was the predicate offense underlying Russell's felony murder conviction. Otherwise, the Court affirmed Russell's remaining convictions and sentence. *Russell I*, 198 P.3d at 277–

78. In a concurring and dissenting opinion, Justice Nelson agreed with Mercer's theory that Gewanski's death was not "a natural and probable consequence" or "the natural or necessary result" of the assault on Wallin so as to justify Russell's felony murder charge. *Id.* at 280 (Nelson, J., concurring in part and dissenting in part) (quoting *State ex rel. Murphy v. McKinnon*, 556 P.2d 906, 910 (Mont. 1976)). Justice Nelson believed the Court should have reversed Russell's felony murder conviction on these grounds, even though the issue was not properly presented on appeal. *Id.*

In 2010, Russell filed a postconviction relief petition arguing his trial and appellate counsel provided ineffective assistance. The District Court held a hearing on the petition where several witnesses testified, including Strong, McDonald, and Mercer. *Russell II*, 368 P.3d at 1173–74. Strong testified she researched felony murder issues and their application to Russell's case. She raised several concerns to the District Court through motions, her trial brief, and proposed jury instructions. One of her arguments—that the aggravated assault was a lesser included offense of the felony murder—proved successful on appeal in *Russell I*. *Id.* at 1174. McDonald testified her analysis of Russell's case did not permit an argument of a temporal break between the assault on Wallin and Gewanski's death. She recalled how the evidence showed that "the crimes occurred in a short period of time, in a relatively small place, with the victims close together." *Id.* Mercer testified there was

insufficient evidence at trial to support a felony murder conviction based upon his belief that there were two separate crimes involving the two victims. He believed no reasonable attorney could hold a different opinion and that failure to reach such a conclusion fell below the duty of care for attorneys. *Id.*

The District Court found Russell killed Gewanski in furtherance of the initial assault Spotted Wolf inflicted upon Wallin. The court found there was "no break in time or space," and the "events took place within feet of one another." (Doc. 7-34 at 17.) The court found Strong and McDonald's interpretation of the evidence was reasonable based on the facts of the case and that "Mercer's argument that he would have proceeded differently is not sufficient to establish ineffective assistance of counsel." (Doc. 7-34 at 18.) The court was unpersuaded Mercer's argument would have changed the outcome had it been advanced. Therefore, the court concluded each attorney rendered effective assistance. (Doc. 7-34 at 17.)

Russell appealed, and in *Russell II*, the Montana Supreme Court once again affirmed his convictions. *Russell II*, 368 P.3d at 1178. Using the test from *Strickland v. Washington*, 466 U.S. 668 (1984), the Court evaluated Russell's ineffective assistance of counsel claims against both Strong and McDonald. *Id.* at 1176–78. The Court held Russell had failed to show either attorney's performance fell below an objective standard of reasonableness and failed to demonstrate the

outcome of trial or appeal would have been different, but for his counsel's unprofessional errors. *Id.* at 1178.

Russell subsequently filed a petition for a writ of habeas corpus. He raised three claims: 1) trial counsel provided ineffective assistance by failing to challenge the felony murder charge, (Doc. 26 at 20–25); 2) appellate counsel provided ineffective assistance by failing to argue there was insufficient evidence to support Russell's felony murder conviction, (*id.* at 25–27); and 3) Russell's right to due process was violated because he was unconstitutionally charged and convicted of felony murder despite there being no causal connection between the predicate felony and Gewanski's death, (*id.* at 27–28).

Judge Cavan reviewed the claims and concluded they were without merit. (Doc. 31 at 34.) Under a "doubly" deferential standard of review, Judge Cavan determined neither trial nor appellate counsel performed deficiently. (*Id.* at 21.) He determined Russell's claim that his right to due process had been violated was procedurally barred. (*Id.* at 16–17.) He also recommended this Court deny Russell a certificate of appealability because Russell had not made a substantial showing of the denial of a constitutional right. (*Id.* at 34–35.)

Russell timely objected to Judge Cavan's findings and recommendations. (Doc. 34.) He asked this Court to overrule Judge Cavan's recommendations regarding the ineffective assistance of Russell's trial and appellate counsel. (*Id.* at

7

5.) He also objected to Judge Cavan's recommendation that this Court deny him a certificate of appealability. (*Id.*) He did not object to the determination that his due process claim was procedurally barred. (*Id.*)

## II. Standard of Review

This Court reviews *de novo* those findings and recommendations a party objects to. 28 U.S.C. § 636(b). The Court is not required to review the findings and recommendations to which the parties do not object. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). This Court ordinarily reviews the portions of a magistrate's findings and recommendations the parties do not object to for clear error.

The Court has reviewed Judge Cavan's findings and recommendation to dismiss Russell's due process claim as procedurally barred and finds Judge Cavan did not commit clear error. Therefore, the Court dismisses Russell's due process claim. The Court will review Russell's objections regarding his ineffective assistance of counsel claims and the certificate of appealability *de novo*.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard for a federal court's review of a habeas petition. 28 U.S.C. § 2254(d). Federal courts may not grant federal habeas relief unless the petitioner shows the earlier state court's decision "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,"

§ 2254(d)(1); "involved an unreasonable application of" such law, *id.*; or "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

The United States Supreme Court set forth the standard for adjudicating claims for ineffective assistance of counsel in *Strickland*, 466 U.S. 668. When applying the § 2254(d) standard of review for habeas petitions to the *Strickland* standard, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." [*Williams v. Taylor*, 529 U.S. 362, 365 (2000)]. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

*Id.*

Under *Strickland*'s two-pronged framework, a defendant asserting ineffective assistance of counsel must show: 1) "counsel's representation fell below an objective standard of reasonableness"; and 2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466

U.S. at 687, 694. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 680.

The standards under both *Strickland* and § 2254(d) are "highly deferential." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689). And when they apply together, "review is 'doubly' so." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Accordingly, the Court will review Russell's claims for ineffective assistance of counsel in his habeas petition by determining "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### III. Discussion

#### A. The Montana Supreme Court's Interpretation of the Felony Murder Statute

First, Russell objects to Judge Cavan's reliance on the Montana Supreme Court's interpretation of Montana's felony murder statute, Mont. Code Ann. § 45-5-102(2). (Doc. 34 at 3.) He argues that in *Russell II*, the Montana Supreme Court retroactively interpreted the felony murder statute in an unexpected and indefensible way, in violation of his constitutional rights. (*Id.* at 4.) Russell cites *Rogers v. Tennessee*, 532 U.S. 451 (2001) and *Bouie v. City of Columbia*, 378 U.S. 347 (1964) in support of this proposition. These two cases discuss the issue of unconstitutional vagueness under the Due Process Clause from the "unforeseeable and retroactive

judicial expansion of statutory language that appears narrow and precise on its face." *Rogers*, 532 U.S. at 457 (citing *Bouie*, 378 U.S. at 352). The Supreme Court held that if the judicial construction of the criminal statute was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," then the construction "must not be given retroactive effect." *Id.* (quoting *Bouie*, 378 U.S. at 354).

The Montana Supreme Court did not reinterpret Montana's felony murder statute in either of Russell's appeals. *Rogers* and *Bouie* are therefore inapplicable. In *Russell I*, because Russell failed to raise or brief the argument on appeal, the Court explicitly left untouched the issue of whether the predicate offense of aggravated assault on Wallin was sufficiently causally related to Gewanski's death. *Russell I*, 198 P.3d at 275 n. 1. In *Russell II*, the Court confirmed the need for a causal link between a predicate offense and felony murder. *Russell II*, 368 P.3d at 1177. As part of the Court's analysis of the second *Strickland* prong (whether counsel's deficient performance prejudiced Russell), the Court held there was substantial evidence in the record to support the district court's finding of a causal link. Specifically, the Court held the spatial and temporal proximity between the assault on Wallin and Gewanski's death evinced a causal connection between the two events. *Id.* at 1177–78.

The Montana Supreme Court reviewed the facts of Russell's case and applied them to the existing law regarding felony murder. The Court did not interpret the felony murder statute in an "unexpected and indefensible" manner. *See Rogers*, 532 U.S. at 457. Therefore, Russell's objection is without merit.

### B. Ineffective Assistance of Counsel

Russell also objects to Judge Cavan's conclusion that neither his trial nor appellate counsel provided ineffective assistance. He urges the Court to reconsider the issue and grant Russell relief on his ineffective assistance of counsel claims. (Doc. 34 at 5.) He asserts trial and appellate counsel performed deficiently because they did not recognize the lack of a causal connection between the assault on Wallin and Gewanski's death. Further, he asserts their failure to raise the issue prejudiced him because it relieved the State of its obligation to prove his intent to kill Gewanski or that Gewanski's death was causally related to the assault on Wallin.

Russell essentially asks this Court to perform a *de novo* review of his claims—but that is the incorrect standard. Under § 2254(d), the Court does not review Russell's claims anew. Instead, the Court's review is "doubly" deferential because the Montana court system has already adjudicated Russell's ineffective assistance of counsel claims on the merits. *See Harrington*, 562 U.S. at 105. The Court will not substitute its own judgment for the state courts'; instead, it considers only "whether

there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Court concludes there is a reasonable argument both trial and appellate counsel satisfied *Strickland*'s deferential standard. Beginning with Strong, Russell's trial counsel: Strong researched the application of felony murder in the case (Doc. 7-33 at 21–22), and she tried to address legal concerns she had by submitting a special unanimity instruction to the jury that would have required the jury to unanimously determine what the predicate offense to the felony murder was and whether Gewanski's death occurred during that offense or in flight thereafter. (Doc. 7-6 at 7.) Strong moved for dismissal at the end of the State's case, arguing the evidence was insufficient to support Russell's charges. (Doc. 7-13 at 1092.) Strong's theory was one of general denial. (Doc. 7-33 at 41.) She understood the State's felony murder theory was that a continuous series of events led from the predicate offense to Gewanski's death. (*Id.* at 47.) In Russell's hearing for postconviction relief, Strong explained her review of the case, her understanding of the charges, and her decision to defend it in the manner she did. In all, based on the actions Strong took in Russell's defense, there is a reasonable argument her performance did not fall below an objective standard of reasonableness.

Turning to McDonald, the Sixth Amendment guarantees the right to effective representation on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985).

Effective legal assistance does not require appellate counsel to press every question of law and raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983). But appellate counsel's performance must meet prevailing professional norms. *Smith v. Murray*, 477 U.S. 527, 535–36 (1986). In the appellate context, the *Strickland* test applies in the following manner:

> First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. [*Smith v. Robbins*, 528 U.S. 259, 285 (2000)]; *Wildman v. Johnson*, 261 F.3d 832, 841–42 (9th Cir. 2001). Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. [*Robbins*, 528 U.S. at 285–86].

*Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010).

McDonald did not fail to discover the sufficiency of the evidence issue. She explained in an affidavit:

> I did not interpret the testimony presented to permit an argument that the assaults on one victim (Wallin) were a separate transaction from the homicide of the other victim or that there was a temporal break between the attacks. My memory of the evidence presented was that the crimes occurred in a short period of time in a relatively small place with the victims close together.

(Doc. 7-27 at 69.) During Russell's hearing on postconviction relief, McDonald further explained her thoughts on the issue:

> I think that you would have to make an argument and—and, if my understanding is correct, that the argument was that it was a separate

14

> transaction, the underlying felony was a separate transaction from the—the murder, I think that you really have to explain the facts in a way that didn't—wasn't consistent with my reading of them.
>
> You would have to argue that there was a—that there was some sort of break in time that would make it separate. And that—that just wasn't consistent with what I read, having looked at the testimony given at trial, and the photographs of the area, and I think that there was a diagram, I remember there being a diagram, and it just appeared to me to be—a small—physically small area.

(Doc. 7-33 at 99.) McDonald instead pursued a double-jeopardy claim on appeal—a claim that proved successful. *See Russell I*, 198 P.3d at 274–75.

McDonald recognized the issue Russell presents now and determined the facts of his case did not support pursuing it on appeal. She focused instead on arguing Russell's conviction of felony homicide precluded a conviction on his aggravated assault charge, which was the predicate offense. There is a reasonable argument McDonald's performance did not fall below an objective standard of reasonableness.

A petitioner must show the state court made an unreasonable determination for both *Strickland* prongs before a federal district court may grant a habeas petition because a failure to satisfy either prong ordinarily requires the denial of an ineffective assistance of counsel claim. § 2254(d); *see Strickland*, 466 U.S. at 697. There is no need to proceed further in the analysis "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). There is a reasonable argument both trial and appellate counsel's performance did not fall below an objective standard of reasonableness.

15

Therefore, Russell has failed to show there is no reasonable argument "that counsel satisfied *Strickland*'s deferential standard." *See Harrington*, 562 U.S. at 105.

*C. Certificate of Appealability*

Lastly, the Court considers Russell's objection to Judge Cavan's recommendation to deny him a certificate of appealability. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Governing § 2254 Cases in U.S. D. Cts. 11. A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Russell has not made a substantial showing of the denial of a constitutional right. Under § 2254, the Court affords great deference to the resolution of Russell's ineffective assistance of counsel claims by the state district court and Montana Supreme Court. The Montana Supreme Court did not reinterpret Montana's felony murder statute in either of Russell's appeals as Russell claims. Furthermore, there is a reasonable argument both trial and appellate counsel's performances did not fall below an objective standard of reasonableness. Russell has not shown jurists of

16

reason could disagree with the Court's resolution of Russell's constitutional claims or conclude the issues Russell presented deserve encouragement to proceed further. Accordingly,

**IT IS ORDERED** that the proposed Findings and Recommendations entered by the United States Magistrate Judge (Doc. 31) are **ADOPTED IN FULL**.

**IT IS FURTHER ORDERED**:

1. Russell's Amended Petition for Writ of Habeas Corpus (Doc. 26) is **DENIED**.

2. A certificate of appealability under 28 U.S.C. § 2253 is **DENIED**.

3. The Clerk of Court shall enter judgment against Russell.

DATED this 27th day of August, 2018.

SUSAN P. WATTERS
United States District Judge